IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

GARY LEE PANSIER and
JOAN RENEE PANSIER,

    Plaintiffs-Appellants,

v.                                          Case No. 10-C-1011

UNITED STATES OF AMERICA,

    Defendant-Appellee.

## DECISION AND ORDER

Gary Lee and Joan Renee Pansier (Pansiers or Appellants) appeal from a decision of the bankruptcy court in an adversary proceeding they commenced seeking a ruling that they were discharged from all liability to the IRS for unpaid taxes for calendar years 1995 through 2006. On September 28, 2010, the Bankruptcy Court granted the Internal Revenue Service's (IRS) motion for summary judgment and concluded that Pansiers' federal tax obligations from 1995 to 2006 were nondischargeable. For the reasons stated herein the Bankruptcy Court's decision will be affirmed.

## BACKGROUND

On November 12, 2008, the Pansiers filed a Chapter 7 bankruptcy in the United States Bankruptcy Court for the Eastern District of Wisconsin, Case Number 08- 32400. After receiving a discharge on May 12, 2009, their bankruptcy was closed on June 1, 2009 as a no-asset case. On August 11, 2009, the Bankruptcy Court granted the Pansiers' motion to reopen their bankruptcy case. The Pansiers then commenced an adversary proceeding (Case Number 09-2235) against the Wisconsin Department of Revenue and the IRS claiming, among other things, that the IRS violated

the automatic stay and that any and all pre-petition federal tax liabilities were discharged by the bankruptcy. The Bankruptcy Court subsequently granted the IRS's motion to dismiss on the ground that the automatic stay excepts the actions taken by the IRS.

On November 20, 2009, the Pansiers filed a second adversary proceeding (Case Number 09-2450) against the IRS seeking a determination that their federal tax liabilities for calendar years 1995 through 2006 were discharged. The IRS and the Pansiers thereafter filed cross-motions for summary judgment on the issue. The IRS requested the Bankruptcy Court to determine as a matter of law that the Pansiers' 1995 through 2006 federal income tax liabilities were not dischargeable under 11 U.S.C. §§ 523(a)(1)(B)(ii) and 523(a)(1)(A). The Pansiers contended, among other things, that they were entitled to summary judgment because the IRS had not provided evidence of their tax debt and the IRS had not provided evidence that they were required to file tax returns under § 523(a)(1)(B).

At the summary judgment hearing on June 2, 2010, the Bankruptcy Court raised a question regarding whether the position of the IRS in the adversary proceeding (that the Pansiers have unpaid federal income taxes for years 1995 through 2006) conflicted with a previous position advanced by the IRS (that the Pansiers did not have 1999 through 2006 federal tax liabilities) in the IRS's notice of objection filed in 2009 in Gary Pansier's Tax Court case. Following the hearing, the parties filed supplemental materials on the issue of judicial estoppel and other issues that had been addressed with the Court. On September 28, 2010, the Bankruptcy Court issued a Memorandum Decision and Order granting Internal Revenue Service's Motion for Summary Judgment. The Bankruptcy Court determined that the Pansiers' 1995 through 2006 federal taxes were nondischargeable pursuant to § 523(a)(1)(B)(ii), and refused to apply judicial estoppel. The Pansiers challenge both rulings.

**JURISDICTION AND STANDARD OF REVIEW**

This Court has jurisdiction to hear an appeal from a Bankruptcy Court's final judgment pursuant to 28 U.S.C. § 158(a). Summary judgment may be granted only upon a showing that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Judicial review of a bankruptcy court's grant of summary judgment is *de novo*. *In re Solis*, 610 F.3d 969, 971 (7th Cir. 2010). Because judicial estoppel is an equitable doctrine, and the decision whether to invoke it is within the trial court's discretion, the Bankruptcy Court's rejection of the doctrine will be reviewed for abuse of discretion. *In the Matter of Costal Plains, Inc.,* 179 F.3d 197, 205 (5th Cir. 1999).

**ANALYSIS**

**A) Timeliness & Necessity of Tax Returns**

A discharge in bankruptcy does not discharge an individual debtor from liability for all unpaid taxes. Specifically, a Chapter 7 bankruptcy "discharge ... does not discharge an individual debtor from any debt ... for a tax ... with respect to which a return, or equivalent report or notice, if required ... was not filed or given." 11 U.S.C. § 523(a)(1)(B)(i). In addition, a bankruptcy court cannot discharge taxes when a required tax return was filed late and when such return was filed "after two years before the date of the filing of the [bankruptcy] petition." 11 U.S.C. § 523(a)(1)(B)(ii). These provisions prohibit an individual from obtaining the benefit of discharged tax obligations when he fails to file tax returns or waits to file until shortly before he files for bankruptcy.

It is well settled that taxes are still due on returns filed post-petition. *See United States v. Young*, 535 U.S. 43, 44 (2002) (citing 11 U.S.C. §§ 523(a)(1)(A), 507(a)(8)(A)(i)). Ample

3

authority also suggests that the two year period under 11 U.S.C. § 523(a)(1)(B)(ii) starts two years before the bankruptcy case filing and "extends indefinitely into the future, and thus encompasses the postpetition period." *In re Harrell,* 318 B.R. 692, 696 (Bankr. E.D. Ark. 2005) (quoting *Savaria v. United States,* 317 B.R. 395, n. 1 (B.A.P. 9th Cir. 2004). Without such a rule individuals could game the system by intentionally waiting to file overdue tax returns until such time as their bankruptcy case was moving forward toward discharge.

Appellants's unpaid taxes clearly fall within the exception to the general rule of discharge created by § 523(a). They filed their bankruptcy case on November 12, 2008. But they admit they waited until December 31, 2008 to file their tax returns from 1999 to 2006. (Appellant Br., Dkt. 3 at 10-11.) And the Bankruptcy Court concluded that they first filed their 1995 to 1998 tax returns on February 13, 2009. Both of these filing dates were *after* Appellants had petitioned for bankruptcy protection.

There is no dispute that Appellants' 1999 to 2006 tax returns were filed post-petition. (Appellant Br., Dkt. 3 at 10-11.) With regard to their 1995 through 1998 returns, however, Appellants take issue with the Bankruptcy Court's determination of late filing. Appellants admit that they mailed copies of their 1995 through 1998 returns to IRS Agent Michael Bake on February 13, 2009, to comply with a condition of supervised release to which Gary Pansier was subject in a separate criminal proceeding. The year is incorrectly shown in Bake's declaration as 2010, but this is clearly a clerical error, since the date that Bake states he stamped on the returns reads February 13, 2009. In any event, Appellants deny that the returns they mailed to Agent Bake were original returns intended for filing. The returns that Appellants mailed to Agent Bake are each stamped "COPY," and show different handwritten dates next to the signatures. The 1995 and 1996 returns indicate they were signed on April 15, 1996, and the 1997 and 1998 returns show a date of

August 20, 1999. (Dkt. 1-4, April 29, 2010 Declaration of Michael Bake, Ex. 1-4.) Appellants argue that given this evidence, and the IRS's own Account Transcripts, which showed a "RETURN DUE DATE OR RETURN RECEIVED DATE" for each of these years in the mid- to late- 1990s, the Bankruptcy Court erred in granting summary judgment.

This issue was raised by the Appellants at the June 2, 2010 hearing on the parties' cross motions for summary judgment, and the Bankruptcy Judge noted "definite confusion here." (Dkt. 4-13, Tr. at 20.) Counsel for the IRS explained that the IRS's computer generated Account Transcripts at the time incorrectly showed that a return was filed when the IRS internally prepared a Substitute For Return (SFR) based on reported earnings for an individual who failed to file. (*Id.* at 18-20.) Counsel also noted there would have been no reason for the Pansiers to mail copies of their returns for those years to Agent Bake if they had already filed them with the IRS as they claimed. (*Id.* at 22.) When Mr. Pansier persisted in his argument that the government's evidence did not establish that they had not filed their 1995 through 1998 returns prior to 2000, the Bankruptcy Judge asked Pansier if he would be willing to give an affidavit stating the years in which he filed the returns. Mr. Pansier responded, "certainly." (*Id*. at 25.) The Judge then went on to explain the importance of Pansier filing such an affidavit:

> I'll need that. I'll need an affidavit, under oath, that '95 through '98 you filed '95 through '98. If there is a way you can produce a copy fine, if you can't, fine, but if that is your position and that is your testimony under oath I will need that.

(Tr. at 25.) Mr. Pansier indicated he understood, and the Judge indicated that counsel for the IRS could supplement the affidavit he had filed on the issue as well. (*Id.*)

Instead of providing an affidavit to support their claim, however, Appellants submitted a joint affidavit and brief in which they explain that "[b]ecause this particular activity took place 11 to 14 years ago, we cannot in good conscience swear that [the returns] were mailed on a particular

5

date to the IRS." (Dkt. 4-9, at 20.) Counsel for the IRS, on the other hand, supplemented his initial filing with a declaration of Scott Paulson, a Milwaukee IRS Agent, who searched the IRS databases and files on June 21 and 22, 2010, and found no record that the Pansiers had filed their returns for 1995 through 1998, prior to that time. (Dkt. 4-8 , Decl. of Scott Paulson, at ¶ 3.) Paulson also explained that the IRS had prepared SFRs for the Pansiers for calendar years 1995-1998 as the Secretary is required to do pursuant to 26 U.S.C. § 6020(b) because according to the IRS databases, the Pansiers had failed to file returns for any of those years. (Paulson Decl. ¶ 5.) The dates on which Paulson states the IRS began or completed their SFRs correspond to the dates in the Account Transcripts that the Pansiers claimed showed when their returns were received. (Compare Paulson Decl. ¶ 5 with Tr. at 17-20.)

Based on this record, the Bankruptcy Court did not err in concluding that there was no genuine dispute over whether the Pansiers had filed their returns with the IRS after they filed their bankruptcy petition. Paulson's declaration established without dispute that the Pansiers did not file their 1995-1998 returns prior to the date they mailed them to Agent Bake. Their claim that they were unable "in good conscience" to swear as to the exact date they mailed their returns because of the passage of time is not enough to create an issue of fact. An exact date of mailing was not required. All they had to say is that they filed them shortly after the date they signed them. Given the fact that they dated their 1996 return "April 15, 1996," a year before it could have been filed, it is probably best they elected not to submit a sworn affidavit to that effect (unless, of course, the date was a clerical error akin to Agent Bake's). In any event, having failed to contravene the evidence offered by the government, they failed to create an issue of fact requiring a trial.

Appellants also suggest that even if they did not file their 1995-1998 tax returns back in the 1990s as they claimed, the Bankruptcy Court nevertheless erred in concluding that the unpaid taxes

6

for those years fell within the exception to discharge created by 11 U.S.C. § 523(a)(1)(B)(ii) because the evidence fails to show that they filed their returns for those years after the commencement of two-year period prior to filing their bankruptcy petition. At most, they contend, the evidence shows they mailed copies of their returns to Agent Bake on February 13, 2009. Mailing their returns to an IRS agent is not the same as filing their returns with the IRS, Appellants contend, and the IRS cannot accept a tax return stamped "Copy" as an original filing, as is evidenced by the fact, attested to in Paulson's declaration, that it has not yet processed their returns. (Br. of Appellants at 10-11.) But as the IRS points out, mailing the returns is not what is relevant here; instead what matters is when such returns were delivered to the IRS. It is the "delivery" of their 1995 through 1998 returns to the IRS that legally constitutes the "filing" of them. *See Hotel Equities Corp. v. Comm'r,* 546 F.2d 725, 727 (7th Cir. 1976) (stating general rule that return is "filed" when "delivered" to IRS). Appellants cite no rule or principle of law that supports their contention that delivering their returns to Agent Bake would not constitute delivering them to the IRS. They did the same thing with their 1999 to 2006 returns, yet fail to argue those returns were not filed. (Bake Decl. ¶ 3.)

Likewise, Appellants cite no rule or principle of law that supports their contention that filing a defective return that the IRS does not process is insufficient to trigger the exception to discharge set forth in § 523(a)(1)(B)(ii). But even if Appellants are correct and filing a copy of a return does not trigger the exception under § 523(a)(1)(B)(ii), (an argument they failed to make in the Bankruptcy Court), it would not change the result. The exception to discharge set forth in § 523(a)(1)(B)(i) excludes taxes for which no return was filed. Either way, the Bankruptcy Court did not err in concluding on the record before it that Appellants had failed to raise a genuine issue

7

of material fact over whether their unpaid taxes for the years in question were covered by § 523(a)(1)(B).

Two additional arguments warrant a brief discussion. First, Appellants argue that the IRS failed to show that their 1995 through 2006 tax returns were "required." The Pansiers contend that the IRS, as a creditor, failed to meet its burden to show that the Pansiers owed tax obligations for the years in question. (Appellants' Br. at 12-13.) But the Bankruptcy Court reasonably addresses this argument by referencing the fact that the Appellants *did* file tax returns for those years – albeit late. The Bankruptcy Court specifically notes that each return filed by Appellants shows taxable earned income. (Bkr. Ct. Decision at 3.) And before ruling on the motion for summary judgment the Bankruptcy Court was confronted with the undisputed fact that third parties had informed the IRS that they paid income to the Pansiers for 1995 through 2006. Appellants offered no evidence that would suggest they had fully paid their tax obligations for the years in question. I agree with the Bankruptcy Court's rationale that "[s]ince the Debtors earned income, and eventually filed their tax returns, their claim that the returns were not "required" must fail." (*Id.*)

Second, Appellants argue that the Bankruptcy Court applied an incorrect standard of review. Specifically the Pansiers suggest that the Bankruptcy Court did not construe the exceptions to bankruptcy discharge liberally in their favor and narrowly against the IRS. (Appellants' Br. at 5-6.) While the Bankruptcy Court noted that "courts are to construe exceptions to discharge in favor of the debtor" in "most cases" it also recognized that the "policy behind tax debts is countervailing." (Bkr. Ct. Decision at 2) (citing *Etheridge v. Illinois*, 127 B.R. 421, 422 (C.D. Ill. 1989)). These observations do not show that the Bankruptcy Court applied an improper standard of review. In ruling on the cross-motions for summary judgment the Bankruptcy Court held that there is "no genuine issue as to any material fact: the Debtors' tax returns were filed late and after the petition"

and "application of Bankruptcy Code § 523(a)(1)(B)(ii) entitles the IRS to judgment as a matter of law". (Bkr. Ct. Decision at 3.) The Bankruptcy Court applied the correct legal standard in finding that Appellants' unpaid taxes were not discharged.

**B) Judicial Estoppel**

Appellants also argue that the Bankruptcy Court erred by not applying the doctrine of judicial estoppel to conflicting positions taken by the IRS in different proceedings. The following facts, relevant to judicial estoppel, are undisputed: in Tax Court proceedings the IRS argued that the Pansiers' case should be dismissed for lack of jurisdiction because, according to the IRS, the "Debtors had no tax liability for 1999 through 2006". The IRS took a conflicting position in the subsequent Bankruptcy Court proceedings, arguing that Appellants *did* have a nondischargeable tax liability for 1999 through 2006. (Appellant's Br. at 17.)

The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 227, n. 8 (2000). "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee*, 156 U.S. 680, 689 (1895). The purpose of the doctrine is "to protect the integrity of the judicial process . . . . by prohibiting parties from deliberately changing positions according to the exigencies of the moment," *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (internal quotes and citations omitted).

9

The Bankruptcy Court looked to four factors in determining whether to apply judicial estoppel: (1) the later position is clearly inconsistent with the earlier position; (2) the facts at issue are the same in both cases; (3) the party to be estopped convinced the first court to adopt its position; and (4) the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *See United States v. Christian,* 342 F.3d 744, 747 (7th Cir. 2003) (citing Maine, 121 U.S. at 750. The Bankruptcy Court then found that the first and second factors of judicial estoppel had been met. But it determined that the third and fourth factors were lacking.

In holding that the third and fourth factors were missing, the Bankruptcy Court concluded that the Tax Court never reached the issue of Appellant's tax liability but rather dismissed the case for lack of subject matter jurisdiction *because* the Appellant's "petition related to the 1996 to 1998 was time-barred and the IRS had not yet mailed the requisite statutory notices for the 1999 through 2006 taxes." (Bkr. Ct. Decision at 4, fn. 2.) Thus, the Bankruptcy Court reasoned, the Tax Court "did not base its dismissal on the issue of tax liability" and so "the IRS's inconsistent position . . . poses no threat to judicial integrity." (Bkr. Ct. Decision at 4.)

For purposes of their appeal Appellants contend that the Tax Court did actually rely on the position of the IRS to the detriment of the plaintiffs. Appellants express their belief the Tax Court would have exercised jurisdiction had the IRS presented it with a 1999 to 2006 deficiency. But this assumption is not supported by the record. Here the Tax Court did not even reach the issue of tax liabilities and therefore had no reason to adopt the IRS's position related to the 1999 to 2006 taxes. Instead the Tax Court dismissed based on lack of jurisdiction because the IRS had not yet sent the required notices of deficiency. A statutory notice of deficiency is a taxpayer's ticket into tax court; without such a notice being sent the Tax Court had no jurisdiction. *See Saunder v. Comm'r*, 813

F.2d 859, 861 (7th Cir. 1987.) So Appellants' argument on the third factor crumbles: without the required notice of deficiency the Tax Court would not have had jurisdiction *regardless* of the IRS's position on the 1999 to 2006 taxes.

On the fourth factor the Bankruptcy Court found that the "IRS [did] not stand to gain from its inconsistent positions . . . [and] the inconsistency does not directly benefit the IRS" (Bkr. Ct. Decision at 5.) Nor does the inconsistency work an injustice on the Pansiers. While the Appellants may have missed an opportunity to resolve any tax liability in their earlier Tax Court action, they will still have an opportunity to adjudicate their 1999 to 2006 taxes after their bankruptcy case is closed.

Finally, the Bankruptcy Court concluded that the IRS's inconsistent positions "were the result of inadvertent mistakes". (Bkr. Ct. Decision at 6.) The Bankruptcy Court rejected Appellants' argument that the IRS had intentionally manipulated the facts. (Bkr. Ct. Decision at 5-6.) Judicial estoppel is generally not applicable where a party's clearly inconsistent positions are the result of "inadvertence or mistake." *In re Cassidy,* 892 F.2d 637, 641 (7th Cir. 1990). Here the IRS admitted that its Senior Counsel relied on outdated printouts of Appellants transcripts when drafting its notice of objection for the Tax Court. After the IRS drafted its notice of objection, but before it was filed, the IRS processed Appellants untimely tax returns. Had the IRS performed a more exhaustive search just prior to filing the notice of objection, it is likely that the IRS would have been aware of Appellants' tax liability. In consideration of these facts the Bankruptcy Court reasonably concluded that the "inconsistent positions set for by the IRS are the result of blundering, inadvertent mistakes" and not part of an intentional effort to obtain an advantage by stating conflicting positions. Therefore the Bankruptcy Court did not enforce judicial estoppel against the IRS.

11

I conclude that the Bankruptcy Court did not abuse its discretion by declining to apply the equitable doctrine of judicial estoppel to the IRS's conflicting positions. Missing are two of the four factors courts consider when deciding whether judicial estoppel is appropriate. Moreover the Bankruptcy Court reasonably concluded that the IRS took the inconsistent positions as a result of inadvertence or mistake.

## CONCLUSION

In sum, I conclude that the Bankruptcy Court did not err in granting the IRS's motion for summary judgment. The undisputed facts established that Appellants' unpaid taxes for the years 1995 through 2006 were excepted from their general discharge under 11 U.S.C. § 523(a)(1)(B), and the Court did not abuse its discretion in concluding that the IRS's erroneous statement that Appellants had no tax liability for calendar years 1996 through 2006 in Appellants' earlier Tax Court proceeding did not warrant application of the doctrine of judicial estoppel in this case. The Bankruptcy Court's decision is therefore **affirmed.**

**SO ORDERED** this _____27th_____ day of April, 2011.

                                                  __s/ William C. Griesbach__
                                                  William C. Griesbach
                                                  United States District Judge